UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
DONNA STEVENSON, :
: CASE NO. 1:11-CV-01354
Plaintiff, :
:
vs. :
: OPINION & ORDER
: [Resolving Doc. Nos. 5, 9, 31, 43, 50, 56, 57,
WESTERN & SOUTHERN MUTUAL : 59, 63, 67, & 68.]
HOLDING COMPANY, et al., :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendants Western & Southern Mutual Holding Company and Western & Southern Life Insurance Company (collectively "Western & Southern"), removed this putative class action to federal court. [Doc. 1] Now, Western & Southern asserts that Plaintiff Donna Stevenson lacks standing and moves for summary judgment. [Doc. 43.] Stevenson opposes and moves to remand. [Doc. 9.] Apparently, the parties both believe that the case should not be before this Court. The Court agrees.

For reasons explained below, Stevenson lacks standing. Consequently, this Court lacks subject matter jurisdiction and REMANDS the case to the Cuyahoga County Court of Common Pleas.

**I.**

The facts of this case bearing on are largely undisputed. However, to the extent that the

Case No. 1:11-CV-01354
Gwin, J.

parties may disagree on any fact pertinent to the Court's subject matter jurisdiction, "the court is empowered to resolve factual disputes," *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915-16 (6th Cir. 1986).

Plaintiff Donna Stevenson, now 80 years old, purchased a life insurance policy from Western & Southern in 1948. The policy insures Stevenson's life for $1,060, and is "payable upon receipt by [Western & Southern] at its home office of due proof of the insured's death." [Doc. 44-4.] At the time of filing, Stevenson was receiving yearly dividend checks from Western & Southern; currently, her contact with Western & Southern is "fairly regular." [Stevenson Deposition, Doc. 48-1 at 27.]

According to Stevenson's testimony, she keeps her policy (her husband is the beneficiary) in a "strong box in the closet," [*id.* at 14, 23.]; Stevenson's three children, all in their mid-fifties, are aware of the policy, [*id.* at 5.] But because Stevenson believes that "the probability [that she] and the members of her Class" are *currently* deceased, "is greater than 70%," [doc. 1-1], she claims that Western & Southern does not take appropriate measures—namely, checking the Social Security Administration's "Death Master File"—to determine whether she is still alive. Rather, Stevenson says, Western & Southern fails to check the Death Master File and therefore fails to proactively assess policyholders' benefits as due and owing.

Stevenson, who originally filed her complaint in the Cuyahoga County Court of Common Pleas, asserts four causes of action on behalf of herself and a purported class: 1) a claim seeking a mandatory injunction ordering Western & Southern to inquire into life-status; 2) a claim seeking a declaratory judgment; 3) a claim that Wester & Southern failed to act in good faith and deal fairly, in violation of Ohio law; and 4) a claim for unjust enrichment. [Doc. 1-1.] After removing to this

Case No. 1:11-CV-01354
Gwin, J.

Court, the Defendants move for summary judgment arguing that, among other things, Stevenson lacks prudential standing.[1]

## II.

"[T]he irreducible constitutional minimum of standing," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992), has three requirements: 1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; 2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and 3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *id.* at 560-61 (internal citations, quotation marks, and alterations omitted). "At the summary judgment stage, [standing requires] a factual showing of perceptible harm." *Id.* at 566.

The Court notes that Stevenson asserts all claims on behalf of herself and on behalf of the putative class she seeks to represent. That does not change the constitutional standing requirements or the Court's analysis of Stevenson's claims. *See O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

If the party asserting federal jurisdiction "cannot establish constitutional standing, their claims must be dismissed for lack of subject matter jurisdiction." *Loren v. Blue Cross & Blue Shield of*

---

[1] Although Western & Southern challenges only Stevenson's prudential standing, the Court has "an obligation to raise standing issues sua sponte." *United States v. Green*, 654 F.3d 637, 647 (6th Cir. 2011). Accordingly, the Court addresses the constitutional standing issue.

-3-

Case No. 1:11-CV-01354
Gwin, J.

*Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).[2/] In a case that has been removed from state court, however, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Because federal courts are courts of limited jurisdiction, they have standing requirements that state general jurisdiction courts do not have.

### III.

Stevenson's injury is too speculative to support federal constitutional standing. Stevenson alleges that she "will imminently sustain an injury in fact, to wit: at the time of her death, Defendants will take no reasonable and ordinary steps to determine whether a life insurance claim is due and payable." [Doc. 41-1 at 8.] That is, Stevenson says that Western & Southern has a duty (based on her understanding of Ohio law) to check whether she is deceased (because she says there is a 70% chance that she is, in fact, dead at this very moment), and Western & Southern will breach that duty after she is dead.[3/] But the *injury* Stevenson wants to prevent, the injury she seeks to remedy with this lawsuit, is that, upon her death, her life insurance benefits may not be paid to her beneficiary. Thus, Stevenson seeks a mandatory injunction ordering Western & Southern to make annual inquiry as to her life status, and declaratory judgment consistent therewith.

---

[2/] The parties' assert somewhat inconsistent positions. Technically, the party asserting federal jurisdiction—here, Western & Southern, who removed to federal court—bears the burden to establish standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). Nonetheless, Western & Southern is now challenging Stevenson's standing; Stevenson, who argues that she does have standing,, "must make the showings required." *Id.*

[3/] According to Stevenson, she "has a 74% probability of death," based on a Social Security Administration 2005 study. Without digging too deeply into the potential flaws of Stevenson's conclusion, suffice to say that Stevenson is very much alive. In fact, the parties devote many pages to supporting and opposing their respective interpretations of the statistics. Regardless of whether Stevenson has a 75% probability of death, or some lesser amount, the Court's ultimate conclusion that Stevenson lacks standing in no part depends on those statistics. As Stevenson asserts, Western & Southern "fail[s] to make a reasonable inquiry of death of their policyholders regardless of their age." [Doc. 49-1 at 16.]

Case No. 1:11-CV-01354
Gwin, J.

In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Supreme Court reasoned that the respondent's "standing to seek the injunction requested depended on whether he was likely to suffer future injury from the use of the chokeholds by police officers." *Id.* at 105. The Court concluded that "if Lyons has made no showing that he is realistically threatened . . . then he has not met the requirements for seeking an injunction in a federal court whether the injunction contemplates intrusive structural relief or the cessation of a discrete practice." *Id.* at 109. Similarly, in *Lujan*, the Court concluded that the petitioners failed to establish standing because "'some day' intentions—without . . . any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." 504 U.S. at 564. The Court went on to explain:

> Although "imminence" is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is 'certainly impending.' It has been stretched beyond the breaking point when, as here, the plaintiff alleges only an injury at some indefinite future time, and the acts necessary to make the injury happen are at least partly within the plaintiff's own control. In such circumstances we have insisted that the injury proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all.

*Id.* at n.2 (internal quotation omitted). For federal standing purposes, Stevenson's injuries are just as speculative as those at issue in *Lyons* and *Lujan*.

First, though Stevenson believes that her beneficiary *might* not be paid, and that her life insurance benefits *might* escheat to the state, she ignores her own testimony to the contrary. By her own reckoning, Stevenson, "has taken reasonable steps to ensure that a claim is made on her policy when she dies by informer her family of the existence and location of her policy." [Doc. 49-1 at 11.]

Case No. 1:11-CV-01354
Gwin, J.

Stevenson's beneficiary—her husband—knows about the policy, as do her children.[4/]

Second, Western & Southern has had recent contact with Stevenson herself. Stevenson received, signed, and cashed annual dividend checks in 2007, 2008, 2009, and 2010; in March 2011, a Western & Southern representative spoke with Stevenson on the phone.

Third, Western & Southern's representative testified, and Stevenson has not refuted, that Western & Southern has a variety of ways to learn whether an insured is deceased. When Western & Southern learns that an insured may be deceased—dividend checks go uncashed, mail is returned, or notification from a family member or friend—Western & Southern then "do[es] whatever is possible to find the person that is the beneficiary." [Maccarone Deposition, Doc. 43-3 at 105-06.] Although Western & Southern does not, as Stevenson would prefer, have a policy of checking the Death Master File, it does use third-party sources to find confirm insureds' deaths, including LexisNexis, TransUnion, the Social Security Administration's website, and even public obituaries. [Doc. 43 at 5.] Using an "escheat checklist," Western & Southern "goes through various exhaustive measures to try to find [the rightful beneficiary]." [Miller Deposition, Doc 46-1 at 81.]

Stevenson does not contest that Western & Southern has a specific protocol [*see* Response to Interrogatory 6, Doc. 44-3 at 9-11 (Interrogatory 6)], for determining when insureds' are deceased, and she does not allege that the protocol would certainly fail to determine her own death status. She apparently is simply unsatisfied that Western & Southern does not *also* check the Death Master File.[5/] But even if the Court assumes that Western & Southern's failure to check the Death Master File is

---

[4/]Immediately before acknowledging that she has spoken with her children about the life insurance policy, Stevenson contradictorily expressed her fears: "If I passed away, I'm not sure my children would know that I have a policy with Western & Southern." [Doc 48-1.]

[5/]That Western & Southern apparently uses the Death Master File for other purposes, [*see* doc. 49-1 at 15], has no bearing on Stevenson's injury.

Case No. 1:11-CV-01354
Gwin, J.

a breach of Ohio's duty of good faith and fair dealing, Stevenson will be injured by that breach only in a particular, hypothetical set of circumstances. First, Stevenson must outlive her husband and three children and fail to notify a new beneficiary of the policy. Second, Western & Southern's must fail to detect that Stevenson has passed away, and Western & Southern must fail to identify Stevenson's ignorant-of-the-policy beneficiary. Third, Stevenson's policy benefits would eventually escheat to the state of Ohio. All three are highly speculative.

That Stevenson (and this Court) can imagine a hypothetical situation in which she might be injured by Western & Southern is insufficient for federal constitutional standing. Federal constitutional standing demands an actual, concrete injury, not one that *could* come to pass under a hypothetical set of circumstances. See *Lujan*, 504 U.S. at 560. Stevenson testified that she has not currently been denied any benefits of her policy, [Doc. 48-1 at 19]; she just believes that "it's only fair" that when people are entitled to money "[i]t should be given to them," [*id.* at 23.] Irrespective of Stevenson's honestly held beliefs about fairness, that injury is not personal to her. Stevenson herself has not asserted an injury sufficient to support federal jurisdiction, so she cannot seek any of the relief she claims.

Without an injury, Stevenson may not seek, in federal court, a mandatory injunction or declaratory judgment. Without an injury, Stevenson cannot assert, in federal court, her claim for unjust enrichment—Western & Southern has not withheld any policy benefit from Stevenson. Without an injury, Stevenson cannot make, in federal court, a state-law tort claim for failure to act in good faith and deal fairly.

IV.

Though as the Byrds sang, there is "a time to die," The Byrds, *Turn! Turn! Turn! (to*

Case No. 1:11-CV-01354
Gwin, J.

*Everything There is a Season)*, *on* Turn! Turn! Turn! (Columbia Records 1965), that time for Ms. Stevenson is, fortunately, "some day," *Lujan*, 504 U.S. at 564 n.2. Because Stevenson has not "met the minimal, federal constitutional requirements for standing," *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 496 (6th Cir. 1999), the appropriate remedy is to remand the case to the state court where it was originally filed. See *id.*; 28 U.S.C. § 1447(c). State courts, especially state general jurisdiction courts, have different standing requirements than federal courts, and Ohio is best positioned to determine whether Stevenson's case should go forward.

For this reason, the Court (without expressing any opinion on the merits of Stevenson's case) GRANTS in part Western & Southern's motions to dismiss, for judgment on the pleadings, and for summary judgment, [Docs. 5; 31; 43]; GRANTS in part Stevenson's motion to remand, [Doc. 9]; DENIES Stevenson's motions to amend her complaint to add a named plaintiff and to file a surreply, [Docs. 50; 56]; DENIES Stevenson's motions for oral argument, [Docs. 57; 68], and DENIES as moot Stevenson's motion for class certification, [Doc. 63].[6/] The case is REMANDED to the Cuyahoga County Court of Common Pleas.

IT IS SO ORDERED.

Dated: March 27, 2011                         s/      *James S. Gwin*
                                              JAMES S. GWIN
                                              UNITED STATES DISTRICT JUDGE

---

[6/] The Court also DENIES as moot Stevenson's motions for an extension of time to file class certification, [Doc. 59], and for leave to file under seal, [Doc. 67].